Evan J. Smith
BRODSKY & SMITH, LLC
240 Mineola Boulevard
First Floor
Mineola, NY 11501
Telephone:    516.741.4977
Facsimile:     516.741.0626
esmith@brodskysmith.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GINA HUTCHINGS, on behalf of herself and those similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> CHURCHILL CAPITAL CORP III, MICHAEL KLEIN, JEREMY PAUL ABSON, GLENN AUGUST, MIKE ECK, BONNIE JONAS, MARK KLEIN, MALCOLM S. MCDERMID, and KAREN MILLS, <br><br> Defendants. | Case No.: <br><br> <u>CLASS ACTION</u> <br><br> CLASS ACTION COMPLAINT FOR: <br> (1)   Violation of § 14 (a) of the Securities Exchange Act of 1934 <br> (2)   Violation of § 20(a) of the Securities Exchange Act of 1934 <br> (3)   Breach of Fiduciary Duties <br><br><br> DEMAND FOR JURY TRIAL |

Plaintiff Gina Hutchings ("Plaintiff"), by her attorneys, on behalf of herself and those similarly situated, files this action against the defendants, and alleges upon information and belief, except for those allegations that pertain to her, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.     Plaintiff brings this stockholder class action on behalf of herself and all other public stockholders of Churchill Capital Corp III ("Churchill" or the "Company"), against Churchill and

the Company's Board of Directors (the "Board" or the "Individual Defendants) for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"), and for breaches of fiduciary duty as a result of Defendants' efforts to merge the Company as a result of an unfair process for an unfair price to Music Merger Sub I, Inc., a Delaware corporation and direct, wholly owned subsidiary of the Company, Music Merger Sub II LLC, a Delaware limited liability company and direct, wholly owned subsidiary of the Company (Music Merger Sub I, Inc. and Music Merger Sub II, LLC are collectively, "Merger Subs"), Polaris Parent Corp., a Delaware corporation ("Polaris Parent"), and Polaris Investment Holdings, L.P., ("Polaris Investment, and collectively with Polaris Parent, the "Parent Corporations," and Parent Corporations collectively with Merger Subs, "Multiplan"). Churchill is a special purpose acquisition company, or "SPAC," an entity that is formed strictly to raise capital through an initial public offering ("IPO") for the purpose of acquiring an existing company, and merging with it to take that entity public.

2.      This action seeks to enjoin a stockholder vote in which Multiplan will receive up to $3.7 billion of new equity or equity-linked capital that will reduce the firm's debt. The transaction includes $1.3 billion worth of fully committed common stock at $10 a share from Churchill's stockholders, and $1.3 billion in convertible debt, convertible at $13 per share, structured as a reverse merger where existing Multiplan shareholders will own the majority of the go-forward company (the "Proposed Transaction").

3.      The terms of the Proposed Transaction were memorialized in a July 12, 2020 filing with the United States Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement").  Under the terms of the Merger Agreement, Churchill will merge into Multiplan and cease to exist, forming one publicly traded entity combined with the investors in Multiplan, significantly diluting Churchill investor's share of Churchill common stock they own.

4.      After the consummation of the Proposed Transaction Multiplan equity holders, along with other PIPE Investors, will own approximately 62% of the post-close entity.  Of the

remainder, only a paltry 16.0% of the surviving entity in total will be owned by public stockholders of Churchill, like Plaintiff. In a situation wherein the maximum amount of stock redemptions takes place, public Churchill stockholder equity in the combined company could drop to a measly 4.2%. Clearly, the Proposed Transaction will dramatically reduce Plaintiff and other public Churchill stockholders' collective ownership interest and voting power.

5.      Thereafter, on July 31, 2020, Churchill filed a Preliminary Proxy Statement on Schedule 14A (the "Preliminary Proxy") with the Securities and Exchange Commission (the "SEC") in support of the Proposed Transaction.

6.      The Proposed Transaction is unfair and undervalued for a number of reasons. Significantly, the Preliminary Proxy describes an insufficient sales process in which the Board failed to create a disinterested committee of independent directors to maximize public stockholder value.

7.      In addition, it appears that Defendant Klein, through certain affiliates, owns the Company's financial advisor, The Klein Group, LLC ("Klein Group").  This is worrisome, especially considering that the Klein Group is entitled to receive $30 million in relation to its work on the Proposed Transaction, yet the Preliminary Proxy contains no fairness opinion whatsoever from the financial advisor.

8.      Next, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to the Company's public stockholders.  For instance, Company insiders, including the Individual Defendants, currently own large, illiquid portions of Company stock that will be rolled over for much higher percentages of the surviving entity than Plaintiff and other Churchill public stockholders.

9.      Further, Defendants have breached their fiduciary duties to the Company's stockholders by agreeing to the Proposed Transaction which undervalues Churchill and is the result of a flawed sales process.

10.     In violation of the Exchange Act and in further violation of their fiduciary duties, Defendants caused to be filed with the SEC the materially deficient Preliminary Proxy on July 31, 2020 in an effort to solicit stockholders to vote their Churchill shares in favor of the Proposed Transaction.  The Preliminary Proxy is materially deficient and deprives Churchill stockholders of the information they need to make an intelligent, informed and rational decision of whether to vote their shares in favor of the Proposed Transaction.  As detailed below, the Preliminary Proxy omits and/or misrepresents material information concerning, among other things: (a) the sales process leading up to the Proposed Transaction; (b) the financial projections for Multiplan, which should have been provided to the Company's financial advisor the Klein Group for use in its respective financial valuations; and (c) financial valuation analyses, if any, that were provided by the Company's financial advisor, Klein Group.

11.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff and the Class.  This action seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from violation of the federal securities laws by Defendants.

## PARTIES

12.     Plaintiff is an individual citizen of the State of Florida.  She is, and at all times relevant hereto has been, a Churchill stockholder.

13.     Defendant Churchill is a Delaware corporation and maintains its principal executive offices at 640 Fifth Avenue, 12th Floor, New York, NY 10019. Churchill's common stock is traded on the NYSE under the ticker symbol "CCXX."

14.     Defendant Jeremy Paul Abson ("Abson") has served as director of the Company at all relevant times.

15.     Defendant Michael Klein ("Klein") has served as director of the Company at all relevant times. Klein also serves as the Company's Chairman of the Board and Chief Executive

4

Officer ("CEO").  Defendant Klein is also the owner of M. Klein and Company, which owns the Klein Group, the financial advisor engaged by the Company, as a wholly owned subsidiary.

16.     Defendant Glenn August ("August") has served as director of the Company at all relevant times.

17.     Defendant Mike Eck ("Eck") has served as director of the Company at all relevant times. He is a Managing Director at M. Klein and Company

18.     Defendant Bonnie Jonas ("Jonas") has served as director of the Company at all relevant times.

19.     Defendant Mark Klein ("Klein") has served as director of the Company at all relevant times.

20.     Defendant Malcolm S. McDermid ("McDermid") has served as director of the Company at all relevant times.

21.     Defendant Karen Mills ("Mills") has served as director of the Company at all relevant times.

22.     The defendants identified in paragraphs 14 through 21 are collectively referred to herein as the "Director Defendants" or the "Individual Defendants."

23.     Non-Party Multiplan is a private company that uses technology-enabled provider network, negotiation, claim pricing and payment accuracy services as building blocks for medical and dental payers to customize the healthcare cost management programs. Multiplan is incorporated in New York and headquartered 115 Fifth Avenue New York, NY 10003.

24.     Non-Party Merger Subs are Delaware Corporations and parties to the Merger Agreement.  Merger Subs are wholly-owned subsidiaries of the Company.

## JURISDICTION AND VENUE

25.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges

violations of Sections 14(a) and Section 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

26.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

27.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Churchill maintains its principal offices in this district, and each of the Individual Defendants, as the Company officers or directors, has extensive contacts within this District.

## CLASS ACTION ALLEGATIONS

28.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23, individually and on behalf of the stockholders of Churchill's common stock who are being and will be harmed by Defendants' actions described herein (the "Class").  The Class specifically excludes Defendants herein, and any person, firm, trust, corporation or other entity related to, or affiliated with, any of the Defendants.

29.     This action is properly maintainable as a class action because:

a.     The Class is so numerous that joinder of all members is impracticable. According to the Company's most recent 10-Q, as of May 12, 2020, there were more than 137 million common shares of Churchill outstanding.  The actual number of public stockholders of Churchill will be ascertained through discovery;

b.      There are questions of law and fact which are common to the Class, including *inter alia*, the following:

    i.      Whether Defendants have violated the federal securities laws;

    ii.     Whether Defendants made material misrepresentations and/or omitted material facts in the Proxy;

    iii.    Whether Defendants have breached their fiduciary duties; and

    iv.     Whether Plaintiff and the other members of the Class have and will continue to suffer irreparable injury if the Proposed Transaction is consummated.

c.      Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class;

d.      Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class;

f.      Plaintiff anticipates that there will be no difficulty in the management of this litigation and, thus, a class action is superior to other available methods for the fair and efficient adjudication of this controversy; and

g.      Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

**THE INDIVIDUAL DEFENDANTS' FIDUCAIRY DUTIES**

30.     By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with Churchill and owe the Company the duties of due care, loyalty, and good faith.

31.     By virtue of their positions as directors and/or officers of Churchill, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause Churchill to engage in the practices complained of herein.

32.     Each of the Individual Defendants are required to act with due care, loyalty, good faith and in the best interests of the Company.  To diligently comply with these duties, directors of a corporation must:

> a.     act with the requisite diligence and due care that is reasonable under the circumstances;
>
> b.     act in the best interest of the company;
>
> c.     use reasonable means to obtain material information relating to a given action or decision;
>
> d.     refrain from acts involving conflicts of interest between the fulfillment of their roles in the company and the fulfillment of any other roles or their personal affairs;
>
> e.     avoid competing against the company or exploiting any business opportunities of the company for their own benefit, or the benefit of others; and
>
> f.     disclose to the Company all information and documents relating to the company's affairs that they received by virtue of their positions in the company.

33.     In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Churchill, are obligated to refrain from:

a.  participating in any transaction where the directors' or officers' loyalties are divided;

b.  participating in any transaction where the directors or officers are entitled to receive personal financial benefit not equally shared by the Company or its public stockholders; and/or

c.  unjustly enriching themselves at the expense or to the detriment of the Company or its stockholders.

34.  Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they owe to Churchill, Plaintiff and the other public stockholders of Churchill, including their duties of loyalty, good faith, and due care.

35.  As a result of the Individual Defendants' divided loyalties, Plaintiff and Class members will not receive adequate, fair or maximum value for their Churchill common stock in the Proposed Transaction.

## SUBSTANTIVE ALLEGATIONS

### *Company Background*

36.  Churchill Capital Corp III was founded in 2019 for the purpose of effectuating a merger, capital stock exchange, asset acquisition, stock purchase, reorganization, or related business combination with one or more businesses. According to its website, "[o]ur strategy is to identify and complete our initial business combinations with a company in an industry that complements the experience and expertise of our management team, Board of Directors and Operating and Strategic Partners who are comprised of a group of individuals from leading Fortune 500 Companies. Our track record provides a highly attractive opportunity for prospective targets looking for proven, expedited access to liquidity, capital and value creation.

37.  Multiplan helps healthcare payers manage the cost of care, improve their competitiveness and inspire positive change. Leveraging sophisticated technology, data analytics,

and a team rich with industry experience, MultiPlan interprets clients' needs and customizes innovative solutions that combine its payment integrity, network-based and analytics-based services. MultiPlan is a trusted partner to over 700 healthcare payers in the commercial health, dental, government and property and casualty markets, and saves these companies approximately $19 billion annually.

38.     According to the July 12, 2020 press release on the Proposed Transaction, "MultiPlan pioneered innovative and mission-critical transaction processing services for healthcare payers, including the industry's largest independent preferred provider network, that reduce medical spend, improve payment accuracy and advance their competitive position. MultiPlan's data- and technology-driven services leverage the Company's 40 years of claim data, national reach, expansive provider network, strong relationships, innovative intellectual property and modern scale technology platform to create value for all stakeholders in the healthcare ecosystem."

39.     In a Global Legal Chronicle article regarding the Proposed Transaction, the author spoke about growth potential in the market, "the transaction will better position MultiPlan to capitalize on the entire $50 plus billion total addressable market, rather than its current subset of $8 billion, organically and through M&A."

40.     Nevertheless, the Individual Defendants have caused Churchill to enter into the Proposed Transaction, thereby depriving Plaintiff and other public stockholders of the Company the opportunity to reap the full benefits of Multiplan's present and future success.

***The Insufficient Process***

41.     As detailed in the Preliminary Proxy, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants, and was designed with only one concern in mind – to effectuate a sale of the Company to MultiPlan.

42.     For instance, while the Preliminary Proxy indicates that Churchill was "contacted by a number of individuals and entities with respect to acquisition opportunities," it is unclear if Churchill itself or the Board proactively investigated such opportunities.

43.     Additionally, the Preliminary Proxy does not indicate that a special committee of disinterested directors was created to run the sales process, including relating to the engagement of a financial advisor.

44.     This is especially problematic as the engaged financial advisor, the Klein Group, which stands to make up to $30 million as payment for its advisory services relating to the Proposed Transaction, is in fact owned by Defendant Klein. Given that the Preliminary Proxy does not contain any financial analyses performed by the Klein Group whatsoever, it begs the question as to what services were performed by the Klein Group to warrant such an exorbitant fee – a fee which Defendant Klein is in essence, paying himself.

45.     Moreover, the Preliminary Proxy is silent as to the existence or nature of any confidentiality agreements entered into between the Company and MultiPlan or any interested third party, whether these agreements were different from one another, and whether any of these agreements contained standstill provisions and, if so, whether such standstill provisions (i) contained a "Don't ask, Don't waive" ("DADW") provision and (ii) under what conditions would said standstill provisions fall away.

46.     It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

***The Proposed Transaction***

47.     On July 12, 2020, the Company issued a press release announcing that Churchill had agreed to be acquired by Multiplan in the Proposed Transaction.  The press release states, in relevant part:

> **NEW YORK, NY** — July 12, 2020 — Churchill Capital Corp III ("Churchill") (NYSE: CCXX), a public investment vehicle, and MultiPlan, Inc. ("MultiPlan"), a market-leading, technology-enabled provider of end-to-end healthcare cost

management solutions, announced today that they have entered into a definitive agreement to merge. The combined company will operate as MultiPlan and will be listed on the NYSE. The transaction implies an initial enterprise value for MultiPlan of approximately $11 billion or approximately 12.9x estimated 2021 Adjusted EBITDA. The transaction will bring to MultiPlan up to $3.7 billion of new equity or equity linked capital to substantially reduce its debt and fund new value-added services.

MultiPlan will continue to operate its business with a relentless focus on delivering service excellence to its payer customers. The existing management team, led by long-standing CEO Mark Tabak, CFO David Redmond and Chief Revenue Officer Dale White, will continue to lead the business, and Hellman & Friedman affiliates ("H&F") will remain MultiPlan's largest shareholder.

The capital from this transaction, combined with Churchill's expertise, will enable MultiPlan to continue to enhance its core offerings to payers through a significant increase in its data analytics platform, extend into new payer customer segments and expand its platform, increasing the value MultiPlan provides to more than 700 payers, their 60 million consumers and MultiPlan's 1.2 million providers that serve them. Further, the transaction will better position MultiPlan to capitalize on the entire $50 plus billion total addressable market, rather than its current subset of $8 billion, organically and through M&A.

Mark Tabak, CEO of MultiPlan, stated, "I'm tremendously proud of the role MultiPlan plays in driving order, efficiency and fairness in healthcare payments. This transaction allows us to create payer value beyond the tech-enabled cost management and payment integrity services we offer today. As a public company, MultiPlan will have greater strategic and financial flexibility, making it better equipped to expand organically, through adjacent acquisitions and by investing in new technologies. We will deliver even more value for healthcare payers in particular, but also for their consumers and providers."

Allen Thorpe, Partner at Hellman & Friedman, said, "MultiPlan's performance as a privately held company has been outstanding. This transaction strengthens the Company and will allow it to further penetrate the broad and fast-growing healthcare market, driving efficiencies and cost savings that benefit the sector and deliver great outcomes for payers, providers and consumers." He further added, "We are excited to join forces with the Churchill team and continue our partnership with MultiPlan to deliver value for its many customers."

"We are pleased to partner with MultiPlan to drive its next phase of growth. MultiPlan is on the right side of healthcare, significantly reducing costs to insurers, employers and consumers," said Michael S. Klein, Chairman and CEO of Churchill. "MultiPlan has an unmatched, long-term track record of customer satisfaction and delivering high returns to investors. This transaction will enable the Company to

enhance its capital structure and position it for substantial incremental growth. MultiPlan fits perfectly with Churchill's core mission to provide intellectual and financial capital to power the growth of great, market leading companies who operate in attractive industries, and can succeed more rapidly in the public markets with increased capital and the benefit of Churchill's Operating and Strategic Partners."

MultiPlan pioneered innovative and mission-critical transaction processing services for healthcare payers, including the industry's largest independent preferred provider network, that reduce medical spend, improve payment accuracy and advance their competitive position. MultiPlan's data- and technology-driven services leverage the Company's 40 years of claim data, national reach, expansive provider network, strong relationships, innovative intellectual property and modern scale technology platform to create value for all stakeholders in the healthcare ecosystem. Further, MultiPlan brings affordability and fairness, delivering approximately $19 billion in medical cost reduction on over 135 million claims – bringing savings to payers and consumers alike.

Churchill Capital Corp III is a NYSE listed, $1.1 billion, equity growth investment company and is the third vehicle in the Churchill Capital group of companies. Churchill's strategy is to identify and complete initial business combinations with unique, leading companies in growing industries that will be catalyzed by the growth capital and transparency of the public equity markets and will be enhanced by the experience and expertise of Churchill's Operating and Strategic Partners, a group of leading *Fortune* 500 CEOs with exceptional shareholder value creation track records who invest directly in Churchill and are committed to assist MultiPlan in its next phase of growth.

**Summary of Transaction**

Churchill will contribute up to $1.1 billion of cash raised during its initial public offering in February 2020. Further, additional investors have committed to participate in the transaction through PIPE commitments to a $2.6 billion new private capital raise consisting of a $1.3 billion common stock at $10 per share and $1.3 billion of 6 percent interest convertible debt, with a conversion price of $13 per share. The convertible debt provides flexible capital, including a non-cash pay option.

The total investment of up to $3.7 billion raised in this transaction will be used to pay down existing debt, purchase a portion of the equity owned by existing MultiPlan shareholders and capitalize the MultiPlan balance sheet. As a result of this transaction, MultiPlan's leverage will be significantly reduced and its existing Net Debt to Adjusted EBITDA ratio will be reduced from 6.8x to approximately 5.8x with its Net Debt to Adjusted EBITDA at the operating company level decreasing to 4.1x[1]. The additional capital and public stock currency will allow the Company

to advance its strategy of investing in organic and acquisition growth, and to increase its investment in data, machine learning and artificial intelligence technologies.

In connection with the transaction, Churchill's sponsor has entered into an agreement to amend the terms of its founder equity to align with the long-term value creation and performance of MultiPlan. Churchill 's sponsor has agreed that a portion of its equity will vest only if the share price of the Company exceeds $12.50 per share over a period between the first and fifth anniversaries of the closing of the transaction, and have agreed not to transfer unvested equity. Churchill has received commitments from its investors and the new PIPE investors for funding that is sufficient to close the transaction.

The Boards of Directors of both Churchill and MultiPlan have unanimously approved the proposed transaction.

The transaction is expected to be completed by the end of October 2020, subject to approval by Churchill stockholders representing a majority of the outstanding Churchill voting power, the expiration of the HSR Act waiting period and other customary closing conditions.

### *The Inadequate Merger Consideration*

48.    As set forth above, the consideration to be provided pursuant to the Proposed Transaction significantly undervalues the stockholders of the Company for their future value of the merged company. Moreover, the merger consideration does not adequately take into consideration the current and probable future financial success of Multiplan.

49.    Being publicly traded will add even more value to the merged company, raising its capital to develop and reduce debt. Churchill investors will only hold a small portion of the equity due to the nature of the Proposed Transaction with the institutional investors of Multiplan keeping around 80% stake in the combined company and representing 41% of voting power.

50.    Further, Churchill investors were kept in the dark according to a February 25, 2020 article, "The other peculiar thing about Churchill Capital III is that it hasn't specified what kind of business it will pursue. Typically, SPACs target an industry to make an acquisition in -- usually an industry that the SPAC's CEO has worked in and knows well. The lack of a specified industry gives Churchill CEO Michael Klein ultimate flexibility. Finally, Churchill Capital III has gone public while Churchill Capital Corp II (NYSE:CCX) is still searching for a deal. While it is not

unusual for SPAC sponsors to create a series of SPACs around a similar team or theme, they usually only have one SPAC in the market at a time. Both Churchill II and III are led by Michael Klein and it is not clear why III has been brought to market at this time."

51.     Defendant Klein, owning 19% of Churchill common stock, had the power to control and influence the Company's investment strategy regarding Proposed Transaction. In addition, Klein's role as founder of Churchill Capital I, Churchill Capital II, Churchill Capital III, and now most recently, Churchill Capital IV, puts into question his motives to grow the surviving merged companies or just cash in from each deal.

52.     This is further exacerbated by the use of the Klein Group as the financial advisor in the Proposed Transaction, another entity which Klein owns.

53.     With respect to the Proposed Transaction, "In connection with the Merger Agreement, the Company and Holdings entered into voting and support agreements (the "Voting Agreements") with certain Churchill stockholders pursuant to which such stockholders have agreed to vote in favor of the Transactions and the other Acquiror Stockholder Matters. Under the Voting Agreements, when taken together with the Churchill Sponsor's agreement to vote in favor of the Transactions and the other Acquiror Stockholder Matters, approximately 41% of the outstanding common stock of Churchill has agreed to vote in favor of the Transactions and the other Acquiror Stockholder Matters. The Voting Agreements terminate upon termination of the Merger Agreement."

54.     In addition to the Voting Agreements, an accompanying agreement issued in the July 12, 2020 8-K on the Proposed Transaction, Churchill signed an "Investors Rights Agreement" which includes a Lock-Up Agreement, barring any sale, offer to sell, enter into a swap, announce any intention to sell, among other requirements, for six months after the closing date of the Merger, according to the Proposed Transaction. In addition to that period of six months, there is an additional "Seller Lock-Up Period," disallowing any sale of the registrable securities held by the

stockholders for 18 months after the closing date of the Merger. This is yet another limitation on Plaintiff and like Churchill shareholders over the authority over their shares.

55.     It is apparent from these statements and the facts set forth herein that this deal is designed to maximize benefits for Klein, the Sponsors and Multiplan at the expense of Churchill's stockholders, which indicates that Churchill stockholders were not an overriding concern in the formation of the Proposed Transaction.

***Potential Conflicts of Interest***

56.     The sales process as indicated in the Preliminary Proxy leading up to the Proposed Transaction indicate serious flaws in the supposed unbiased nature of the decision to enter into the Proposed Transaction.

57.     The breakdown of the benefits of the deal indicate that Churchill insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Churchill.

58.     Certain insiders stand to receive massive financial benefits as a result of the Proposed Transaction.  Notably, Company insiders, including the Individual Defendants, currently own large, illiquid portions of Company stock that will be rolled over for much higher percentages of the surviving entity than Plaintiff and other Churchill public stockholders as follows –

### Beneficial Ownership Table

| | | | After the Business Combination | | | |
| | Before the Business Combination | | No Redemption | | With Maximum Redemption | |
| Name and Address of Beneficial Owner(1) | Number of Shares | Percent Owned | Number of Shares | Percent Owned | Number of Shares | Percent Owned |
|---|---|---|---|---|---|---|
| *Churchill Directors and Executive Officers Pre-business combination:* | | | | | | |
| Michael Klein(2) | 27,500,000(3) | 20% | 53,500,000(4) | 7.5% | 53,500,000(4) | 8.5% |
| Jay Taragin | — | — | — | — | — | — |
| Jeremy Paul Abson(5) | — | — | — | — | — | — |
| Glenn R. August(5)(6) | — | — | 41,111,550(13) | 5.7% | 41,111,550(13) | 6.4% |

| | | | | | | |
|---|---|---|---|---|---|---|
| Mike Eck(5) | — | — | — | — | — | — |
| Bonne Jonas(5) | — | — | — | — | — | — |
| Mark Klein | — | — | — | — | — | — |
| Malcom S. McDermid(5) | — | — | — | — | — | — |
| Karen G. Mills(5) | — | — | — | — | — | — |
| All directors and executive officers prior to the business combination as a group (nine individuals) | 27,500,000(3) | 20% | 94,611,550 | 12.6% | 94,611,550 | 14.2% |
| *Churchill Five Percent Holders Pre-business combination:* | | | | | | |
| Churchill Sponsor III LLC(3) | 27,500,000(3) | 20% | 53,500,000(4) | 7.5% | 53,500,000(4) | 8.5% |
| *Churchill Directors and Named Executive Officers Post-business combination:* | | | | | | |
| Mark Tabak(7)(8) | — | — | 13,952,312 | 2.0% | 13,952,312 | 2.3% |
| David Redmond(8) | — | — | — | — | — | — |
| Dale White(8) | — | — | 8,108,251 | 1.2% | 8,108,251 | 1.3% |
| Jeff Doctoroff(8) | — | — | 303,679 | * | 303,679 | * |
| Michael Kim(8) | — | — | 303,679 | * | 303,679 | * |
| Glenn R. August(5)(6) | — | — | 41,111,550(13) | 5.7% | 41,111,550(13) | 6.4% |
| Richard Clarke(8) | — | — | — | — | — | — |
| Anthony Colaluca | — | — | — | — | — | — |
| Paul Emery(9) | — | — | — | — | — | — |
| Michael Klein(2) | 27,500,000(3) | 20% | 53,500,000(4) | 7.5% | 53,500,000(4) | 8.5% |
| Hunter Philbrick(9)(11) | — | — | — | — | — | — |
| Allen Thorpe(9)(11) | — | — | — | — | — | — |
| Bill Veghte(5) | — | — | — | — | — | — |
| All directors and executive officers post-business combination as a group (15 individuals) | 27,500,000 | 20% | 117,886,839 | 16.2% | 117,886,839 | 18.3% |
| *Churchill Five Percent Holders Post-business combination:* | | | | | | |
| Churchill Sponsor III LLC | 27,500,000(3) | 20% | 53,500,000(4) | 7.5% | 53,500,000(4) | 8.5% |
| GIC Investor(10) | | | 49,582,593 | 7.2% | 49,582,593 | 8.2% |
| Green Equity Investors(11) | | | 38,426,551 | 5.6% | 38,426,551 | 6.4% |
| H&F Investors(12) | — | — | 213,672,302 | 31.1% | 213,672,302 | 35.5% |
| Oak Hill Advisors Entities(13) | — | — | 41,111,550 | 5.7% | 41,111,550 | 6.4% |
| Partners Group Entities(14) | | | 30,291,371 | 4.4% | 30,291,371 | 5.0% |
| The Public Investment Fund of The Kingdom of Saudi Arabia(15) | — | — | 53,750,000 | 7.8% | 53,750,000 | 8.9% |

59.     It is no wonder that, in light of the extremely lucrative profits for themselves, the Board allowed the Company to be sold far under its proper value.

60.     Additionally, as stated above, Defendant Klein stands to gain additional cash in the form of the payment to financial advisor KG, which he owns.

17

61.     Thus, while the Proposed Transaction is not in the best interests of Churchill stockholders, it will produce lucrative benefits for the Company's officers and directors

***The Materially Misleading and/or Incomplete Preliminary Proxy Statement***

62.     On July 31, 2020, the Company filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that failed to provide the Company's stockholders with material information and/or provides them with materially misleading information critical to the total mix of information available to the Company's stockholders concerning the financial and procedural fairness of the Proposed Transaction

*Omissions and/or Material Misrepresentations Concerning the Sales Process Leading up to the Proposed Transaction*

63.     Specifically, the Preliminary Proxy fails to provide material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Proxy fails to disclose:

      a.  The Preliminary Proxy fails to give adequate information regarding the engagement of financial advisor Klein Group, including why this entity was selected given its affiliated nature to Defendant Klein, whether it submitted a fairness opinion containing financial analyses to the Board, and why it is entitled to up to $30 million in fees for advisory services related to the Proposed Transaction; and

      b.  The Preliminary Proxy fails to disclose sufficient information regarding the existence of and/or number and nature of all confidentiality agreements entered into between Churchill and any interested third party (including MultiPlan and its affiliates) during the sales process, if their terms differed from one another, and if they contained "don't-ask, don't-waive" or standstill provisions, and if so, the specific conditions, if any, under which such provisions would fall away or prevent parties from submitting a bid;

*Omissions and/or Material Misrepresentations Concerning MultiPlan's Financial Projections*

64.     The Preliminary Proxy fails to provide material information concerning financial projections for MultiPlan and/or the Preliminary Proxy discloses management-prepared financial projections for MultiPlan which are materially misleading.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

65.     The Preliminary Proxy fails to provide material information concerning the financial projections prepared by MultiPlan management.  Specifically, the Preliminary Proxy fails to disclose the material line items for the following metrics:

      a.   Adjusted EBITDA, including the following the specific line items of: net income before interest expense, interest income, income tax provision, depreciation, amortization of intangible assets and non-income taxes, adjusted to exclude certain non-operating expenses and certain non-recurring items, including gain or loss on disposal of assets, management fees, integration expenses, transaction related expenses, gain on repurchase and cancellation of notes and stock-based compensation

      b.   Levered free cash flow, including the following line items of: (i) adjusted EBITDA minus (ii) total cash interest expense and interest income, cash taxes, changes in net working capital and capital expenditures (including capitalized development costs)

66.     Additionally, the Preliminary Proxy fails to disclose a reconciliation of all Non-GAAP to GAAP financial metrics, including Adjusted EBITDA and Levered free cash flow.

67.     This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness.  Without this information, stockholders were not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

68.     Without accurate projection data presented in the Preliminary Proxy, Plaintiff and other stockholders of Churchill are unable to properly evaluate the Company's true worth or make an informed decision whether to vote their Company stock in favor of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by the Klein Group*

69.     The Preliminary Proxy indicates that the Klein Group was engaged as a financial advisor for the Company in relation to the Proposed Transaction.  However, no fairness opinion whatsoever from the Klein Group was included in the Preliminary Proxy.

70.     The Preliminary Proxy indicates that Churchill's management primarily relied upon "a comparable company analysis" to proscribe a value to MultiPlan in an effort to "assess the value that public markets would likely ascribe to Churchill following a business combination with MultiPlan."

71.     In regards to this Selected Public Company analysis, the Preliminary Proxy fails to disclose the following:

    a.   Who prepared this analysis;

    b.   The specific reasoning as for choosing each comparable company;

    c.   All underlying metrics needed to calculate MultiPlan's Adjusted EBITDA; and

    d.   All underlying metrics needed to calculate MultiPlan's Adjusted Levered Free Cash Flow;

72.     Properly conducted financial analyses are critical for stockholders to be able to make an informed decision on whether to vote their shares in favor of the Proposed Transaction.

73.     Without any such financial valuations, Churchill public stockholders are missing critical information necessary to evaluate whether the proposed consideration truly maximizes stockholder value and serves their interests.

**FIRST COUNT**

**Claim for Breach of Fiduciary Duties**

**(Against the Individual Defendants)**

74.     Plaintiff repeats all previous allegations as if set forth in full herein.

75.     The Individual Defendants have violated their fiduciary duties of care, loyalty and good faith owed to Plaintiffs and the Company's public stockholders.

76.     By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and other members of the Class of the true value of their investment in Churchill.

77.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty and good faith owed to the stockholders of Churchill by entering into the Proposed Transaction through a flawed and unfair process and failing to take steps to maximize the value of Churchill to its public stockholders.

78.     Indeed, Defendants have accepted an offer to sell Churchill at a price that fails to reflect the true value of the Company, thus depriving stockholders of the reasonable, fair and adequate value of their shares.

79.     Moreover, the Individual Defendants breached their duty of due care and candor by failing to disclose to Plaintiff and the Class all material information necessary for them to make an informed decision on whether to vote in favor of the Proposed Transaction.

80.     The Individual Defendants dominate and control the business and corporate affairs of Churchill, and are in possession of private corporate information concerning Churchill's assets, business and future prospects.  Thus, there exists an imbalance and disparity of knowledge and

economic power between them and the public stockholders of Churchill which makes it inherently unfair for them to benefit their own interests to the exclusion of maximizing stockholder value.

81.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

82.     As a result of the actions of the Individual Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Churchill's assets and have been and will be prevented from obtaining a fair price for their common stock.

83.     Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the Class.

84.     Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

## SECOND COUNT

### Violations of Section 14(a) of the Exchange Act

#### (Against All Defendants)

85.     Plaintiff repeats all previous allegations as if set forth in full herein.

86.     Defendants have disseminated the Preliminary Proxy with the intention of soliciting stockholders to vote their shares in favor of the Proposed Transaction.

87.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as

necessary or appropriate in the public interest or for the protection of investors, to solicit

or to permit the use of her name to solicit any proxy or consent or authorization in respect

of any security (other than an exempted security) registered pursuant to section 78*l* of this

title.

88.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy

statement, form of proxy, notice of meeting or other communication, written or

oral, containing any statement which, at the time and in the light of the

circumstances under which it is made, is false or misleading with respect to any

material fact, or which omits to state any material fact necessary in order to make

the statements therein not false or misleading or necessary to correct any statement

in any earlier communication with respect to the solicitation of a proxy for the same

meeting or subject matter which has become false or misleading.

89.     The Preliminary Proxy was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy is materially misleading and omits material facts that are necessary to render them non-misleading.

90.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

91.     The Individual Defendants were at least negligent in filing a Preliminary Proxy that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy not misleading.

92.     The misrepresentations and omissions in the Preliminary Proxy are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of its entitlement to decide whether to vote its shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

### THIRD COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

93.     Plaintiff repeats all previous allegations as if set forth in full herein.

94.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy was materially misleading to the Company stockholders.

95.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary

Proxy before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

96.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Churchill' business, the information contained in its filings with the SEC, and its public statements.   Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from the Company's stockholders and that the Preliminary Proxy was misleading.   As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy and are therefore responsible and liable for the misrepresentations contained herein.

97.     The Individual Defendants acted as controlling persons of Churchill within the meaning of Section 20(a) of the Exchange Act.   By reason of their position with the Company, the Individual Defendants had the power and authority to cause Churchill to engage in the wrongful conduct complained of herein.   The Individual Defendants controlled Churchill and all of its employees.   As alleged above, Churchill is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9.   By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in her favor and in favor of the Class, and against the Defendants, as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representatives and Plaintiff's counsel as Class counsel;

B.     Enjoining the Proposed Transaction;

C.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.    Declaring and decreeing that the Merger Agreement was agreed to in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

E.    Directing the Individual Defendants to exercise their fiduciary duties to commence a sale process that is reasonably designed to secure the best possible consideration for Churchill and obtain a transaction which is in the best interests of Churchill and its stockholders;

F.    Directing defendants to account to Plaintiff and the Class for damages sustained because of the wrongs complained of herein;

G.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

H.    Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: August 11, 2020

**BRODSKY & SMITH, LLC**

By: _____
Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*